UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE OHIO CASUALTY INSURANCE
COMPANY,

     Plaintiff,

                             CASE NO.:

v.

MARMER CONSTRUCTION, INC.

     Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Ohio Casualty Insurance Company ("Ohio Casualty"), through counsel, and pursuant to, *inter alia*, 28 U.S.C. § 2201, *et seq.*, files this Complaint for Declaratory Judgment against Defendant, Marmer Construction, Inc. ("Marmer"), seeking declaratory judgment that Ohio Casualty has no liability to Marmer under the performance bond that Ohio Casualty issued naming Marmer as obligee on the grounds that Ohio Casualty was discharged based on Marmer's failures to reasonably and promptly inspect and to the extent it overpaid for work it now deems defective.

## PARTIES, JURISDICTION, AND VENUE

1.     Ohio Casualty is a Massachusetts corporation with its principal place of business in Boston, Massachusetts, making it a citizen of Massachusetts

pursuant to 28 U.S.C. § 1332(c)(1). Ohio Casualty is authorized to conduct business in Florida.

2.      Marmer is a Florida corporation that maintains its principal place of business in Sebring, Highlands County, Florida, making it a citizen of Florida pursuant to 28 U.S.C. § 1332(c)(1).

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because complete diversity exists between Ohio Casualty and Marmer as citizens of different states. This Court also or alternatively has jurisdiction over this action pursuant to 28 U.S.C. § 2201 because an actual and justiciable controversy exists between Ohio Casualty and Marmer.

4.      Jurisdiction and venue are proper in this Court because the construction project at issue in this litigation is situated in Wauchula, Hardee County, Florida, and a substantial portion of the events giving rise to the claims occurred in Hardee County, which is within the boundaries of the Middle District of Florida and within the province of the Tampa Division of this Court.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.      The Project, Construction Contract, and Bond**

5.      On or about June 19, 2024, Marmer entered into a Subcontract Agreement (the "Subcontract") with Level Up Site Development, LLC ("Level Up"), for Site Work as set forth in the Subcontract in connection with a construction project referred to as Wauchula Place located in Wauchula, Florida, where Marmer was acting as the general contractor (the "Project"). A copy of the Subcontract is attached as **Exhibit "A."**

6.      In connection with the Subcontract, Ohio Casualty issued a Subcontractor Payment and Performance Bond, bearing Bond No. 41K237350, naming Level Up as principal and Marmer as obligee (the "Bond") in the penal sum of $594,190.97 (the "Penal Sum"). A copy of the Bond is attached hereto and incorporated herein as **Exhibit "B**."

7.      The Bond provides, in pertinent part:

1. The obligation of Surety under this bond ("Bond") shall arise only when all the following conditions have been met:

(A) Obligee has fulfilled its obligations under the Subcontract; and

(B) Principal is, and Obligee has declared Principal to be, in material default under the Subcontract for failing to perform the Construction Work ("Principal's Default"); and

3

(C) Obligee has terminated the Subcontract and notified the Surety in writing of Principal's Default and such termination.

2. When all the conditions in Section 1 have been met, the Inspection Period shall be twenty-one (21) business days from the last event to occur of the following:

(A) The date Surety is provided access to the Construction Work site; or

(B) Surety's receipt of Obligee's written notice of Principal's Default; or

(C) The date the documentation and information in Obligee's or its agent's possession and requested by Surety is received by Surety, which information and documentation must be requested by Surety within ten (10) days of its receipt of Obligee's written notice of Principal's Default.

*    *    *

4. When all the conditions in Section 1 are met and prior to the expiration of the Inspection Period, Surety shall elect one of the following remedies:

*    *    *

**(E) Notify Obligee that Surety denies liability. Surety shall cite its reasons for denial of liability;** or

*    *    *

7. Surety's aggregate liability under this Bond is limited to the Subcontract Balance, subject to the reduction of the liability of Surety to the extent of any sums paid by Surety or the Principal in partial satisfaction of Surety's and Principal's obligations under the terms of the

4

Principal's Default. The penal sum of this Bond shall be reduced by the amount of any payments made by Surety in the good faith belief that such payments were made properly under the Bond.

8. Definitions:

(A) The phrase "Subcontract Balance," means the total amount payable by Obligee to Principal under the Subcontract and any amendments thereto, less the amounts properly paid by Obligee under the Subcontract.

8.     Thus, the Bond provides, among other things, that Ohio Casualty's aggregate liability is limited to the Subcontract Balance, which is defined as the total amount payable from Marmer to Level Up under the Subcontract and any amendments thereto, less amounts the Obligee properly paid under the Subcontract.

9.     Ohio Casualty's liability, if any, to Marmer is further limited to the Penal Sum of the Bond.

## II.    MARMER's Claim(s) Against the Bond

10.    On or about March 25, 2025, Marmer sent a 48-hour notice letter to Level Up, providing notice and a 48-hour opportunity to cure allegedly defective work and delays in accordance with section 28 of the Subcontract.

11.    Then, on March 28, 2025, Marmer sent Ohio Casualty a letter entitled "Notice of Subcontract Default," declaring Level Up in material default of the

Subcontract for failing to perform work in accordance with the schedule for completion of the sanitary/sewer and water utilities, advising that it terminated Level Up on that same day, and committing to pay/allocate the Subcontract Balance to Ohio Casualty as required by the Bond.

12.     According to Level Up, the Subcontract Balance as of the date of termination was $209,032.29.

13.     Ohio Casualty conducted a conference with Marmer, investigated its allegations, and evaluated an April 16, 2025 proposal (the "April 16, 2025 Proposal") for completion of Level Up's Subcontract work dated from Dalyn Real Estate Development, Corp. ("Dalyn"), as presented by Marmer. Ohio Casualty approved Marmer to proceed with the scope of work identified in the April 16, 2025 Proposal on April 21, 2025. Ohio Casualty expressly noted that Dalyn's work was to be set off by the remaining contract funds and that it was only approving the scope of work contemplated in the presented proposal. See April 21, 2025 email attached as **Exhibit "C."**

14.     On or around May 19, 2025, counsel for Marmer contacted Ohio Casualty again and advised that Dalyn had encountered "other significant issues" in Level Up's work that needed to be addressed. Specifically, Marmer alleged that Level Up's work was installed improperly, did not meet the design intent, and failed to pass the necessary pressure tests, among other issues. With this notice,

Marmer also provided a new proposal from Dalyn dated May 15, 2025 (the "May 15, 2025 Proposal"), estimating $43,200 to inspect the alleged installation issues in Level Up's work and $52,000 to repair the allegedly defectively installed work. A copy of the May 19, 2025 email and the enclosed May 15, 2025 Proposal are attached as **Exhibit "D."**

15.     Ohio Casualty approved Marmer to proceed with the work identified in the May 15, 2025 Proposal on May 20, 2025. As of May 20, 2025, the remaining Subcontract Balance was sufficient to cover the work included in the May 15, 2025 Proposal.

16.     On May 28, 2025, Marmer contacted Ohio Casualty to notify it that additional testing revealed new alleged significant issues with Level Up's work on the water line, sanitary sewer pipe, and storm sewer pipe, relying in part on an email from Rayl Engineering concluding that the sanitary and storm piping installed by Level Up was deficient and needed to be replaced to meet FDEP standards. The email did not identify what specifically failed to meet FDEP standards.

17.     Marmer's May 28, 2025, email included two new proposals from Dalyn (the "May 21, 2025 Proposal" and the "May 27, 2025 Proposal"), in addition to the April 16, 2025, and May 15, 2025 Proposals previously provided. In total, Marmer sent four separate proposals to Ohio Casualty, claiming the cost to

complete and/or remedy defective work by Level Up on the Project totaling $218,293.40 over the remaining Subcontract Balance: the April 16, 2025 Proposal, the May 15, 2025 Proposal, the May 21, 2025 Proposal, and the May 27, 2025 Proposal (collectively, the "Dalyn Proposals"). A copy of the May 28, 2025 email, the enclosed Dalyn Proposals, and Dalyn's Commitment Summary is attached as **Exhibit "E."**

18.    On or around May 28, 2025, Ohio Casualty retained a consultant to perform an independent investigation and inspection of the allegedly deficient work. The parties conducted a site visit on June 2, 2025.

19.    On June 2, 2025, Ohio Casualty sent Marmer an email advising that it did not agree to be liable for the work contained in Dalyn's proposals because:

(i)    The alleged defects could have been discovered with a reasonably diligent inspection prior to payment to Level up and are thus patent defects.

(ii)    Marmer failed to provide Ohio Casualty with sufficient evidence to justify the complete removal and replacement of the 8-inch water line, 6-inch sanitary sewer line, and the 12-inch storm sewer line. There was no documentation, and nothing was presented from Rayl Engineering identifying what FDEP standards were not met by the currently installed sanitary and storm sewer lines; and

8

(iii)    Based on Ohio Casualty's independent investigation, the prices included in Dalyn's proposals were excessive and unreasonable.

*See* June 6, 2025 Email from Ohio Casualty attached as **Exhibit "F."**

20.    On June 9, 2025, Ohio Casualty confirmed to Marmer that it was denying its claim on the Bond for the complete removal and replacement of the 8-inch water line, the 6-inch sanitary sewer line, and the 12-inch storm sewer line because, among other things, the alleged defects were patent in nature and were thus discoverable upon reasonable inspection. A copy of the June 9, 2025 email is attached as **Exhibit "G."**

21.    On September 18, 2025, Marmer sent Ohio Casualty a letter advising it had undertaken the work detailed in Dalyn's proposals, incurred $281,562.93 in excess of the Subcontract balance, and was making a formal claim on the Bond. A copy of the September 18, 2025 email is attached as **Exhibit "H."**

22.    Marmer's actions, failures, and/or omissions discharged Ohio Casualty under the Bond.

23.    Because Marmer failed to properly inspect Level Up's work and paid Level Up for the work it now alleges is deficient, Marmer accepted Level Up's work and is therefore barred from making a claim on the Bond for these amounts.

24.    Ohio Casualty has retained the undersigned attorneys to represent it in this action and has agreed to pay the reasonable attorneys' fees for the services rendered.

25.    All conditions precedent to bringing this action have been performed or, in the alternative, have occurred or been waived.

## COUNT I – DECLARATORY JUDGMENT

26.    Ohio Casualty incorporates the allegations of paragraphs 1 through 25 above as if fully set forth herein.

27.    A bona fide dispute and adverse interest exists between Ohio Casualty and Marmer concerning Ohio Casualty's powers, privileges, rights, and/or obligations under the Bond insofar as Ohio Casualty believes that it is discharged from its obligations under the Bond due to Marmer's failure to promptly and reasonably inspect Level Up's work before acceptance and to the extent of Marmer's overpayment to Level Up for work it now deems defective and that Ohio Casualty has no liability to Marmer.

28.    Marmer, on the other hand, believes the Bond is still valid and that Ohio Casualty is liable to Marmer under the Bond.

29.    Ohio Casualty seeks certainty as to the existence or non-existence of its obligations and liability under the Bond. Accordingly, Ohio Casualty has an

actual, present, and practical need to have any doubt on this issue resolved and removed.

30.    Ohio Casualty seeks a declaration that it has satisfied and/or attempted to satisfy its obligations under the Bond and/or that the Marmer discharged Ohio Casualty of its performance obligations, or voluntarily relinquished its known rights under the Bond, as a result of: 1) Marmer's failure to conduct reasonable and prompt inspections of Level Up's work; 2) Marmer's negligent performance of inspections and/or failure to uncover defects in Level Up's work; 3) Marmer's release of bonded Subcontract funds and/or overpayment to Level Up for work Marmer now deems deficient; and 4), whether Ohio Casualty can recover its consultant and engineering fees from Marmer due to Marmer's failure to make reasonable and prompt inspections as required by the contract documents.

31.    Thus, there is a case of actual controversy within the jurisdiction of this Court, and a declaratory judgment in favor of Ohio Casualty is proper.

32.    Ohio Casualty is entitled to its attorneys' fees and costs incurred in bringing this action pursuant to applicable law, the terms of the Subcontract, the Bond and Section 57.105(7), Florida Statutes.

WHEREFORE, Ohio Casualty respectfully requests that this Honorable Court grant it the following relief:

a.    Enter a declaratory judgment in Ohio Casualty's favor and against Marmer declaring that Ohio Casualty is discharged from any and/or has no obligation, liability, or duty of any kind to Marmer under the Bond, and has no liability for any cost, expense, fee, or damage to Marmer for any damages claimed in connection with the Subcontract or the Project, or as a result of having issued the Bond;

b.    Award Ohio Casualty its attorneys' fees and costs incurred in connection with this action; and

c.    Grant and award Ohio Casualty all other and further relief as this Honorable Court deems just, equitable, and proper.

Dated: October 1, 2025.

Respectfully submitted,

s/ A. Alston Merritt
ALBERTA L. ADAMS
Florida Bar No. 80063
aadams@pdtlegal.com
A. ALSTON MERRITT
Florida Bar No. 1010102
amerritt@pdtlegal.com
PASKERT DIVERS THOMPSON
100 North Tampa Street, Suite 3700
Tampa, Florida 33602
(813) 229-3500 – Telephone
(813) 229-3502 – Facsimile
*Attorneys for Ohio Casualty*
*Insurance Company*